**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY DETAINEE LITIGATION** | Misc. No. 08-0442 (TFH)<br><br>Civil Action Nos.<br><br>02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0999, 05-cv-1048, 05-cv-1124, 05-cv-1189, 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1506, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1971, 05-cv-1983, 05-cv-2088, 05-cv-2104, 05-cv-2185, 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2384, 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2479, 06-cv-1668, 06-cv-1684, 06-cv-1690, 06-cv-1761, 06-cv-1765, 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, 08-cv-0987, 08-cv-1101, 08-cv-1153, 08-cv-1207, 08-cv-1221, 08-cv-1224, 08-cv-1228, 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, 08-cv-1360, 08-cv-1440, 08-cv-1789, 08-cv-1805, 08-cv-1828, 08-cv-1923, 08-cv-2019, 08-cv-2083, 09-cv-0745** |

**MEMORANDUM OPINION**

Pending before the Court is the government's Motion to Amend the September 11, 2008 Protective Order and Counsel Access Procedures and the January 9, 2009 Amended TS/SCI Protective Order and Counsel Access Procedures ("Motion to Amend") (Dkt. No. 1684, 08-mc-0442). The government asks the Court to amend the protective orders entered in the above-captioned cases in order to prevent petitioners from viewing their own statements, if those statements have been designated as classified or protected. Upon consideration of the motion, petitioners' opposition, and the government's reply, the Court will deny in part and grant in part the motion.

## BACKGROUND

The impetus for the government's motion is two January orders that permitted a particular petitioner to view a document containing portions of his statements that were included in his classified factual return. In those orders, the Court interpreted one of the protective orders entered in the habeas cases for the detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo Bay") to allow petitioners to view documents containing their own statements, even if those statements are classified.

The government's motion is the latest salvo in an ongoing dispute between the government and petitioners over what information the Court intended to allow counsel for a petitioner to share with that petitioner. On September 11, 2008, the Court entered the Protective Order and Procedures for Counsel Access to the Detainees at Guantanamo Bay (Dkt. No. 409, 08-mc-0442) ("Protective Order" and "Counsel Access Procedures," respectively). The parties disagree whether, under the Protective Order and Counsel Access Procedures, statements made by a petitioner to someone other than counsel are "provided by" the petitioner, and therefore may be shared with the petitioner. The relevant portion of the Protective Order reads, "Petitioners' counsel shall not disclose to a petitioner-detainee classified information not *provided by* that petitioner-detainee." Protective Order ¶ 29 (emphasis added). The Counsel Access Procedures are similarly ambiguous, instructing that "[c]ounsel may not divulge classified information not learned from the detainee to the detainee." Counsel Access Procedures ¶ 31.

On January 15, 2009, pursuant to a motion filed by a single petitioner, the Court entered an order interpreting the above provisions to permit the petitioner to view the statements he made to United States government agents that were included in his classified

factual return. *See* Order (Dkt. No. 109, 05-cv-1244) (Jan. 15, 2009). Counsel was permitted to share with the petitioner a document containing portions of such statements.[1]

Two weeks after the Court's order, the government filed a Motion to Vacate the January 15, 2009 Order. The government indicated that the declassification review of the petitioner's classified statements was now complete. The Court's order was moot, the government argued, because petitioner's counsel could review the declassified version of the statements with the petitioner. Alternatively, the government recommended that the Privilege Review Team review the document created by counsel against the declassified material and redact any information that remained classified. Noting that the government's motion was filed only four days (two business days) before counsel was scheduled to visit the petitioner, and therefore there was insufficient time for the Court to identify and review the redacted information, the Court denied the motion. *See* Order (Dkt. No. 122, 05-cv-1244) (Jan. 30, 2009).

In the Order of January 30, 2009, the Court also clarified the government's obligation under the Protective Order and Counsel Access Procedures in cases where counsel compiles a petitioner's classified statements into a new document and seeks to share that document with the petitioner. In such cases, any classified statements in the document must be redacted if the government completes a declassification review of the classified statements before the petitioner's counsel is scheduled to visit the petitioner *and* there is sufficient time for the appropriate Merits Judge to review the redactions. Therefore, if the government failed to

---

[1] Each petitioner's classified factual return includes exhibits, many of which detail statements made by the petitioner to government agents. Counsel was only permitted to extract from those exhibits the petitioner's statements and the dates the statements were made. *See* Order (Dkt. No. 109, 05-cv-1244).

3


declassify the petitioner's classified statements in a timely manner, his counsel could review those still-classified statements with him. This compromise balanced the government's interest in protecting classified information with petitioners' right to "a prompt habeas corpus hearing," *Boumediene v. Bush*, 128 S.Ct. 2229, 2275 (2008).

The aforementioned January orders prompted the government to file the Motion to Amend at issue here, on March 11, 2009. With few new arguments and little additional substance, the government asks the Court to vacate the January orders because, hypothetically, they will allow other petitioners to review classified information. Specifically, it now asks the Court to amend the Protective Order and Counsel Access Procedures to ensure that petitioners do not view their own classified statements. Its proposed amendments would permit counsel "to share with a detainee only classified information counsel learn from the detainee during the course of communications with the detainee via legal mail or legal visits." Mot. to Amend 4. A petitioner would not be allowed to view his statements cited in his classified factual return. Rather, "the proposed amendments would allow disclosure of such statements only if they were taken from declassified materials or if the appropriate national security agencies approved the disclosure." *Id.* at 3-4. Though not at issue in the January decisions, the government also seeks to amend the Amended Protective Order and Counsel Access Procedures for cases involving Top Secret/Sensitive Compartmented Information ("TS/SCI") (Dkt. No. 1496, 08-mc-0442) (Jan. 9, 2009) ("TS/SCI Protective Order" and "TS/SCI Counsel Access Procedures," respectively), since they too contain the disputed provisions. *See* TS/SCI Protective Order ¶ 30; TS/SCI Counsel Access Procedures ¶ 34. As for a deadline by when a declassified review of petitioners' statements would be completed, and therefore available for disclosure to petitioners, the government requests that the Court "allow the Government's declassification process to run its

course." Mot. to Amend 6.

The government further moves to amend the Protective Order and Counsel Access Procedures, and their TS/SCI counterparts, to limit petitioners from viewing protected information. "Protected" information is *un*classified information that may nevertheless pose a threat to national security if publicly disclosed. *See* Protective Order 1-2. Under the government's proposed amendments, counsel could only share a petitioner's protected statements with the petitioner if counsel learned the information during the course of communications with the petitioner or if the appropriate national security agencies approved the disclosure. Mot. to Amend 4.

Pursuant to a minute order, petitioners filed a consolidated opposition on May 11, 2009. All but two petitioners[2] oppose the motion. The government filed a reply on May 22, 2009.

## DISCUSSION

The government seeks to withhold statements from petitioners that have been designated as either classified or protected. These two classification categories present disparate security concerns and are governed by disparate case law. Therefore, the Court will separately assess the government's motion with respect to classified statements and protected statements.

**A.    Classified Statements**

With respect to petitioners' statements that have been designated as classified, the government's motion is premised on two arguments: (i) the Court misinterpreted the Protective Order and Counsel Access Procedures, and (ii) the government has the discretion to withhold classified material from petitioners. The Court rejects the first argument, but accepts the second.

---

[2] According to the government, counsel for Petitioner Alkhadr Abdullah Al Yafie (ISN 34) and Petitioner Tofiq Nasser Awad Al Bihani (ISN 893) "indicated that their clients would consent to the motion." Mot. to Amend 3 n.3.

Therefore, the Court will decline to amend the Protective Order and Counsel Access Procedures, but will clarify the options available to the government if it objects to a court order to provide a petitioner's classified statements to that petitioner.

> i.   *A petitioner may review his classified statements*

The Court, for the third time, declares that a petitioner may view his own classified statements. The government submits that the "language of the Protective Order and Counsel Access Procedures did not suggest that petitioners' counsel would be permitted to share with petitioners classified information not learned from their respective clients." Mot. to Amend 12. The government is mistaken.

In accord with *Boumediene*, the Protective Order and Counsel Access Procedures permit a petitioner to view his statements, even if they are classified. Discussing the deficiencies of the Combatant Status Review Tribunals ("CSRT"), the Supreme Court in *Boumediene* isolated one for particular rebuke: "the constraints upon the detainee's ability to rebut the factual basis for the Government's assertion that he is an enemy combatant." *Boumediene*, 128 S.Ct. at 2269. For example, the Supreme Court continued, during the CSRT proceedings the detainee only has access to the "unclassified portion" of the information on which the government relies, and therefore he "may not be aware of the most critical allegations that the Government relied upon to order his detention." *Id.* (citations omitted). In these habeas proceedings, a petitioner's classified factual return – "the factual basis upon which [the government] is detaining the petitioner"[3] – is based, in part, on that petitioner's classified statements. The government thus again seeks to deny petitioners access to critical classified information. The Court heeds the Supreme Court's directive that in order be aware of "the most critical allegations" relied upon by

---

[3] Case Management Order (Dkt. No. 940, 08-mc-0442) (Nov. 6, 2008) 1.

the government, petitioners may be permitted to view classified information. Without access to their statements, the Court fails to see how petitioners can effectively rebut the allegations in the factual returns. No one is better positioned to challenge the government's reliance on a petitioner's statements than the petitioner himself. The Court was not, and is not, inclined to adopt the government's narrow interpretation of the Protective Order and Counsel Access Procedures, which would effectively spurn one the few procedural requirements enumerated in *Boumediene*.

The Court does recognize that, under the government's proposal, a petitioner's counsel would still have access to that petitioner's statements. Counsel, however, cannot be expected to rebut allegations stemming from those statements without the assistance of the petitioner himself. The government itself concedes that "petitioners should have access to their own statements to the extent respondents rely upon such statements to justify detention." Reply in Support of Mot. to Amend (Dkt. No. 1771, 08-mc-0442) 4. Moreover, the security risk from providing petitioners access to their own statements is not comparable to the risk from disclosing other classified information.[4] Presumably, petitioners are familiar with their own statements. With minimal security risk and maximum litigation benefit to petitioners, the Court intended to provide petitioners access to their own statements, even if they are classified.

Therefore, the Court declines to amend the Protective Order and Counsel Access Procedures, or its January interpretation of them. Petitioners are permitted to review their own

---

[4] The Court does not trivialize the government's concern that providing a petitioner access to his own statements could alert him to the significance of details that he previously thought inconsequential. *See* Mot. to Amend 16. The government's concern, however, appears to be the context, not the content, of the petitioner's words. Such concerns can be addressed by providing a petitioner with alternatives to the actual documents that contain the petitioner's statements. *See infra*.

statements included in their respective classified factual returns.

> ii. *The government has the discretion to withhold a petitioner's classified statements from that petitioner*

The government's second argument is that disclosure of classified information is left to the Executive's discretion. Though the Court holds that the Protective Order and Counsel Access Procedures permit petitioners to view their classified statements, it acknowledges that the decision to disclose classified information is an Executive function. "[I]t is the responsibility of [the Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk." *CIA v. Sims*, 471 U.S. 159, 180 (1985). The government has designated petitioners' statements in the classified factual returns as "secret." The unauthorized disclosure of "secret" information "could be expected to cause serious damage to the national security." Exec. Order No. 13,292, § 1.2(a)(2), 68 Fed. Reg. 15,315, 15,315-16 (Mar. 25, 2003). Therefore, the Court may not force the Executive to disclose a petitioner's statements contained in his classified factual return. To the extent the Court's interpretation of the Protective Order and Counsel Access Procedures requires the disclosure of a petitioner's classified statements over the government's objection, it must be clarified.

> iii. *If a court determines that a petitioner's classified statements are material, the government must provide the petitioner with the statements or a sufficient alternative*

Drawing from recent case law and relevant criminal statutes, the Court finds that a district court may order the disclosure of classified information over the government's objection, if certain conditions are met. The district court would first determine if the information is material and would help facilitate meaningful habeas review. If the answer is affirmative to both questions, the court may order the disclosure of the classified information. If the government

8

still objects to the disclosure of the classified information, it must provide a sufficient alternative to the information. If the government fails to provide such an alternative, the court may order an assortment of remedies.

The question of what determinations must be made before a court may order the government to disclose classified information to the petitioners in these habeas proceedings was not answered in *Boumediene* and is one of first impression in this Circuit. As the Supreme Court left any remaining questions to "the expertise and competence of the District Court," *Boumediene*, 128 S.Ct. at 2276, the Court will rely, by analogy, on the Classified Information Procedures Act ("CIPA"), which governs the procedures for handling classified information in criminal proceedings. The D.C. Circuit, in *Al Odah v. United States*, 559 F.3d 539, 544-47 (D.C. Cir. 2009), similarly relied on CIPA "by analogy" in a case concerning procedures for ordering the disclosure of classified material to petitioners' counsel in these habeas proceedings.

In *Al Odah*, the government filed complete versions of the classified factual returns with the district court, but redacted some information in the copies provided to petitioners' counsel. The government redacted information pertaining to individuals other than the petitioner at issue or information that was "especially sensitive source-identifying information." *Id.* at 543. Finding that the redacted material was relevant, the district court granted petitioners' counsel access to the unredacted classified factual returns. The D.C. Circuit, applying CIPA "by analogy," vacated the court's order. Classified information is not discoverable, the Circuit stated, "on a mere showing of theoretical relevance in the face of the government's classified information privilege." *Id.* at 544 (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)). The Circuit ordered the government to provide the district court with an assessment of whether the redacted information was material and whether counsel's access to it was necessary

9

for the court to conduct a meaningful review of the petitioner's detention. *See Al Odah*, 559 F.3d at 544-45. If the court determined that the information was material and necessary for meaningful review, and therefore discoverable, it must then determine whether "alternatives to access would suffice to provide the detainee with the meaningful opportunity [to challenge his detention as] required by *Boumediene*." *Id.* at 548.

The Court finds that the *Al Odah* framework, with its reliance on CIPA, is applicable here. *Al Odah* represents one of the few cases where the D.C. Circuit has discussed handling classified material for the Guantanamo Bay detainees. Moreover, the issue in that case is analogous to the issue here: the framework for ordering the dissemination of classified information over the government's objection. If anything, the redactions at issue here are less tenable than the redactions in *Al Odah*. There, the government redacted information pertaining to other individuals, whereas here the government is denying petitioners' access to their own statements.

In applying *Al Odah*, the Court notes that many statements from a given petitioner will be material. A petitioner's factual return, which forms the basis of the government's detention decision, is based, in part, on that petitioner's statements. The Court questions whether the government can deny the materiality of statements that it has chosen to rely upon to justify a petitioner's detention. Nevertheless, such materiality determinations should be made by the Merits Judges on an individual basis.

As for alternatives, the government submits that it intends to declassify some of the petitioners' statements. Mot. to Amend 25. For those statements that the government plans to declassify, declassification alone may not suffice. Timing is of the essence. As the Supreme Court admonished, "[w]hile some delay in fashioning new procedures is unavoidable, the costs

10

of delay can no longer be borne by those who are held in custody." *Boumediene*, 128 S.Ct. at 2275.  Petitioners, it continued, "are entitled to a prompt habeas corpus hearing." *Id.*  If the government cannot produce declassified statements in a timely manner, petitioners should not bear the "costs" in the form of delayed merits hearings.  As for those statements that the government does not declassify, the Merits Judges would determine if alternatives to disclosure would effectively substitute for unredacted access to the statements.  *See Al Odah*, 559 F.3d at 547.  For example, under CIPA, the government may move to admit relevant facts that the specific classified information would tend to prove or provide a summary of the information.  *See* 18 U.S.C. App. III, § 6(c)(1).  These or other alternatives are available in these habeas cases if the Merits Judges determine they "would suffice to provide the detainee with 'a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law.'"  *Al Odah*, 559 F.3d at 547 (quoting *Boumediene*, 128 S.Ct. at 2266).  If the government fails to provide a sufficient alternative, and continues to object to the disclosure of a petitioner's material classified statements, then the Court may order an appropriate remedy.

Though *Al Odah* is silent on the consequences if the government fails to provide a sufficient alternative to material classified information, CIPA enumerates a number of remedies.  Under CIPA, if the government objects to the disclosure of material classified information and fails to provide a sufficient alternative, the district court may dismiss counts in the indictment, make findings against the government on any issues as to which the excluded classified information relates, or preclude part of a witness's testimony.  *See* 18 U.S.C. App. III, § 6(e)(2).  These remedies are likewise available to the Merits Judges in these proceedings.  At a minimum, the government cannot rely on a petitioner's statement if it does not timely provide that petitioner

with a sufficient alternative to that statement.

**B.      Protected Statements**

The Court will also not amend the protective orders and counsel access procedures to prevent counsel from sharing a petitioner's protected statements with that petitioner. The government avers that "[p]rotected information . . . is not suitable for disclosure . . . to protect the security of the United States and other significant interests." Mot. to Amend 15 (quotation omitted). The Court agrees, generally, that certain unclassified information may not be suitable for disclosure. Such precautions, however, are not necessary with respect to providing a petitioner access to his own statements. The government's current position, that a petitioner's protected statements should not be disclosed to that petitioner, cannot be reconciled with its earlier representation in a different motion that it would permit a petitioner to view those very protected statements. *See* Resp'ts' Mot. to Confirm Designation of Unclassified Factual Returns as "Protected" (Dkt. No. 1416, 08-mc-0442) 2 ("the [unclassified factual returns] may be disclosed to the individual Petitioners"). The Court previously ordered that a petitioner's protected statements in his unclassified factual return must be provided to that petitioner. *See* Memorandum Opinion (Dkt. No. 1780, 08-mc-0442) (June 1, 2009). That decision remains binding.

To the extent the government's request is directed toward petitioners' statements not included in the unclassified factual returns, the Court again declines to amend the protective orders and counsel access procedures. Petitioners are presumptively permitted access to their unclassified statements. Pursuant to the Protective Order and TS/SCI Protective Order, the government may move to protect a petitioner's unclassified statements not included in his unclassified factual return, thereby denying the petitioner access to those statements. *See*

12

Protective Order ¶ 34; TS/SCI Protective Order ¶ 35. However, the government's motion must include an "explanation tailored to the specific information at issue," *Parhat v. Gates,* 532 F.3d 834, 853 (D.C. Cir. 2008).

## PROCEDURES

To clarify the implications of its analysis, the Court below sets forth the procedures that the parties must follow if counsel for a petitioner seeks to disclose the petitioner's classified statements to that petitioner. If a petitioner's counsel seeks to disclose such statements to the petitioner, counsel must identify and list the classified statements he or she seeks to share with the petitioner.[5] Pursuant to Local Rule of Civil Procedure 7(m), counsel must share the list of statements with the government and attempt to reach agreement on which statements can be declassified and by what date. If the parties are unable to reach agreement, counsel for a petitioner may file, with the appropriate Merits Judge, a Motion to Disclose Petitioner's Statements to the Petitioner, listing the petitioner's statements that counsel wishes to disclose to the petitioner and explaining why each statement is (i) material to the petitioner's case and (ii) necessary to facilitate meaningful habeas review. Within two weeks after the filing of such a motion, the government shall file a response, specifically addressing issues (i) and (ii) for each statement. In its response, the government must also submit an alternative for each statement. *See Al Odah*, 559 F.3d at 548 (granting the district court discretion to resolve all CIPA-related inquiries simultaneously). If the government proposes to provide a declassified version of a statement, the government must further indicate by when the declassified version can be provided.

---

[5] The Court stresses that statements are just that, a petitioner's words. Counsel may not share information from classified documents containing a petitioner's statements besides the petitioner's words and the date the statements were made.

**CONCLUSION**

For the reasons set forth in this opinion, the government's motion will be denied in part and granted in part. The government's proposal to amend the Protective Order, the TS/SCI Protective Order, the Counsel Access Procedures, and the TS/SCI Counsel Access Procedures will be denied. The government's request to modify the procedures for providing petitioners access to their respective protected statements will also be denied. To the extent the government's motion seeks to modify the procedures for providing petitioners access to their respective classified statements, it will be granted.

An order accompanies this memorandum opinion.

July 10, 2009                                                   /s/
                                                      Thomas F. Hogan
                                                   United States District Judge