UNCLASSIFIED// FOR PUBLIC RELEASE

~~SECRET // NOFORN~~

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TARIQ MAHMOUD ALSAWAM,

    Petitioner,

v.

BARACK H. OBAMA, President of the
United States, *et al.*,

    Respondents.

Filed with Classified
Information Security Officer

CISO _S. Harumd_

Date _04/10/2012_

Civil Action No. 05-01244 (CKK)

**MEMORANDUM OPINION AND ORDER**
(April 10, 2012)

Before the Court is the [250/255] Motion to Compel Discovery filed by Petitioner Tariq

Mahmoud Al Sawah (ISN 535). *See* Pet'r's Mot. to Compel Disc. ("Pet'r's Mem."), ECF No.

[250]; Pet'r's Supplement to Mot. to Compel Disc. ("Pet'r's Suppl. Mem."), ECF No. [255].

The Government has filed an Opposition and Petitioner has filed a Reply. *See* Gov't's Mem. in

Opp'n to Pet'r's Mot. to Compel Disc. ("Gov't's Opp'n"), ECF No. [256]; Gov't's Resp. to

Pet'r's Supplement to Mot. to Compel Disc. ("Gov't's Suppl. Opp'n"), ECF No. [260]; Pet'r's

Reply to Gov't's Mem. in Opp'n to Mot. to Compel Disc. ("Pet'r's Reply"), ECF No. [261]. The

motion is therefore fully briefed and ripe for a decision. In an exercise of its discretion, the Court

finds that hearing oral argument would not be of assistance. *See* LCvR 7(f). Upon careful

consideration of the parties' submissions,[1] the relevant authorities, and the record as a whole,

Petitioner's Motion to Compel shall be GRANTED IN PART and DENIED IN PART.

---

[1] The Court's consideration has been confined to the specific arguments tendered by the
parties in their briefing. The Court has not, and shall not, sift through the record in an attempt to
identify arguments, or locate evidence, in support of the parties' respective positions.

UNCLASSIFIED// FOR PUBLIC RELEASE

SECRET // NOFORN

## I. LEGAL STANDARD

Petitioner's Motion to Compel is governed by the [68] Case Management Order entered

by Judge Thomas F. Hogan on November 6, 2008, as amended by Judge Hogan's [86] Order

dated December 16, 2008 (the "CMO"), and as supplemented by this Court's [149] Order

Regarding Petitioner's Requests for Additional Discovery dated April 6, 2009 ("April 6, 2009

Order"). For purposes of Petitioner's Motion to Compel, the Government's relevant disclosure

obligations under this regime are three-fold.

First, Section I.D.1 of the CMO delineates the scope of the Government's ongoing

obligation to disclose "exculpatory evidence" to Petitioner even in the absence of a specific

request. Specifically, the Government must "disclose to the petitioner all reasonably available

evidence in its possession that tends materially to undermine the information presented to

support the government's justification for detaining the petitioner." CMO § I.D.1. The term

"exculpatory evidence" includes, but is not limited to, "any evidence or information that

undercuts the reliability and/or credibility of the Government's evidence," such as "evidence that

casts doubt on a speaker's credibility, evidence that undermines the reliability of a witness's

identification of Petitioner, evidence that indicates a statement is unreliable because it is the

product of abuse, torture, or physical incapacity, or evidence that demonstrates material

inconsistencies between statements." Apr. 6, 2009 Order at 2. "[T]he term 'reasonably available

evidence' means evidence contained in any information reviewed by attorneys preparing factual

returns for all detainees," and "also includes any other evidence the government discovers while

litigating habeas corpus petitions filed by detainees at Guantanamo Bay." CMO § I.D.1.

Therefore, the universe of "reasonably available evidence" includes, but is not limited to,

2

SECRET // NOFORN

traverses filed by other detainees.

Second, Section I.E.1 of the CMO requires the Government to disclose the following to Petitioner upon his request: "(1) any documents and objects in the government's possession that the government relies on to justify detention; (2) all statements, in whatever form, made or adopted by the petitioner that the government relies on to justify detention; and (3) information about the circumstances in which such statements of the petitioner were made or adopted." CMO § I.E.1. The phrase "in whatever form" means "all forms (including audio or video), whether cumulative or not." Apr. 6, 2009 Order at 3. The phrase "circumstances in which such statements of the petitioner were made or adopted" encompasses "all surrounding circumstances," including, but not limited to, "the use of coercive tactics as well as inducements and promises." *Id.*

Third, Section I.E.2 of the CMO confers upon the Court the discretion to authorize additional limited discovery beyond what is required by Sections I.D.1 and I.E.1 upon a showing of "good cause." Requests for additional discovery must "(1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful; and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government." CMO § I.E.2 (internal citations and quotations omitted).

3

SECRET // NOFORN

## II. DISCUSSION

Through his [250/255] Motion to Compel, Petitioner seeks information relating to nine

overarching categories. The Court shall address each of those nine categories in turn below.

Preliminarily, however, the Court must address the Government's arguments that Petitioner's

pending discovery requests are either untimely or barred by the doctrine of judicial estoppel.

Neither argument need detain the Court long. Over the years, Petitioner's focus in this litigation

has undergone a marked shift. Earlier in this case, Petitioner's attention was focused, albeit not

exclusively, on obtaining information relating to his cooperation with the Government in order to

demonstrate that he has served as a valuable source of intelligence. In fact, this action remained

at a standstill for quite some time while the parties attempted to reach an agreement resolving the

issues surrounding Petitioner's detention. Unsurprisingly, when negotiations failed to yield an

agreement, Petitioner's focus changed, such that today Petitioner's challenge to his continued

detention depends in large part on his efforts to undermine the credibility or reliability of his

many alleged inculpatory statements to interrogators. His pending discovery requests are part of

those efforts.

Considering the record as a whole, the Court is unpersuaded by the Government's

arguments that Petitioner's pending discovery requests are either untimely or barred by the

doctrine of judicial estoppel. Beginning with the Government's timeliness argument, the Court

recognizes that Petitioner could and should have made some of his pending discovery requests

earlier, but the Court also acknowledges that the factual and legal landscape of this case has been

under continual development with the Government's ongoing disclosures and with each

successive opinion from the United States Court of Appeals for the District of Columbia Circuit.

4

SECRET // NOFORN

Even though this action has been pending for some time, the Court is ultimately left unconvinced

that Petitioner should now be precluded from pursuing limited discovery requests that could

potentially lead to evidence that would undermine the basis for his continued detention. That is

particularly so because the Government has failed to identify any material and undue prejudice

that it would suffer if it were required to respond to Petitioner's requests at this time. Although

the Government claims that "additional discovery threatens to disrupt the schedule contemplated

by the Court for resolving the merits of this case," Gov't's Opp'n at 24, the Court has not set

dates for the merits hearing or even for the briefing of pre-hearing motions. While requiring the

Government to respond to limited discovery requests might delay a final resolution of this case,

any delay would be minimal in the grand scheme of things and would not significantly disrupt

the schedule contemplated by the Court. Meanwhile, to the extent the Government intended to

suggest that it would be burdened merely by being required to respond to Petitioner's discovery

requests, any such burden would not be undue so long as the requests fall within the scope of

permissible discovery under the CMO. In the final analysis, the Court concludes that timeliness

does not present a bar to the Court's consideration of Petitioner's Motion to Compel.

The Government's argument based on the doctrine of judicial estoppel is even less

persuasive. The Government sets forth its argument in a single footnote in its Opposition, a

footnote that does not even appear in the argument section. *See* Gov't's Opp'n at 6 n.2. This

Court "need not consider cursory arguments made only in a footnote," *Hutchins v. District of

Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc), and it declines to do so here.

Regardless, although the Court recognizes that Petitioner's current litigation stance stands in

tension with his prior theory of the case, the Court is not convinced that Petitioner's earlier

5

SECRET // NOFORN

efforts to emphasize his cooperation with the Government ever crystallized into a concrete

litigation position that could be said to be "clearly inconsistent" with his current efforts to

undermine the credibility or reliability of his alleged inculpatory statements. *New Hampshire v.*

*Maine*, 532 U.S. 742, 750 (2001). Furthermore, for reasons already discussed, the Government

has not shown to this Court's satisfaction that Petitioner "would derive an unfair advantage or

impose an unfair detriment" on the Government if allowed to pursue his present theory of the

case. *Id.* at 751. Accordingly, the doctrine of judicial estoppel likewise presents no bar to the

Court's consideration of Petitioner's Motion to Compel.

      With those preliminary matters aside, the Court now turns to addressing the nine

categories of information sought by Petitioner through his Motion to Compel.

     *A.     Petitioner's Requests for Photographs (Request No. 1)*

      Petitioner's first request seeks a series of photographs. It can be divided into two basic

sub-parts. The Court addresses each sub-part in turn.

      First, Petitioner seeks a copy of a single photograph shown to David Hicks (ISN 002)

("Hicks") and identified as Petitioner during an interrogation ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Pet'r's

Mem. at 8. Petitioner avers, and the Government does not deny, that the Government intends to

rely on Hicks' identification of Petitioner in support of its allegation that Petitioner worked for

al-Qaida as an explosives instructor, albeit in conjunction with other evidence. As a result,

permitting Petitioner to obtain a copy of the photograph shown to Hicks will allow him to

challenge the accuracy and reliability of the identification. In this respect, Petitioner's first

request satisfies the requirements of Section I.E.2 of the CMO. Accordingly, it shall be

GRANTED.

6

SECRET // NOFORN

Second, Petitioner seeks (1) copies of photographs of Hamza Zubair ("Zubair") taken

following certain raids that took place in Karachi, Pakistan in September 2002 and (2) two

photographs alleged to be of Petitioner that were shown to Lufti Al Ambi Al Gharise (ISN 1209)

("Al Gharise") during an interrogation ████████████ *See* Pet'r's Mem. at 2; Pet'r's Reply at

2. In this case, Petitioner intends to proceed in part under the theory that he "strongly resembles"

Zubair, relying in large part on his contention that he has on at least one occasion been

mistakenly identified by Government agents as Zubair. *See* Pet'r's Reply at 3. From this

premise, Petitioner intends to argue that "government interrogators came to mistakenly believe

that Petitioner was an al Qaida explosives trainer and, as a result, led Petitioner into make [sic] a

[sic] false confessions that he was an al Qaida explosives trainer." Pet'r's Mem. at 8. For its

part, the Government concedes that there was "initial confusion" by Government agents that led

to the mistaken identification referred to by Petitioner, but otherwise paints Petitioner's theory as

a "whimsical fantasy." Gov't's Opp'n at 12-13. Regardless of whether the Government intends

to rely upon "photo identifications by individuals who might have mistaken Petitioner for

Zubair," *id.* at 14, the Court finds that Petitioner is entitled to pursue limited discovery in

connection with his present theory, whatever its ultimate merits. In this respect, Petitioner's first

---

[2] Petitioner originally sought "copies of photographs of Hamza Zubair that are within the possession of the government," Pet'r's Mem. at 2, but he has since narrowed his request to those specific "photographs of Hamza Zubair taken following [the] raids that took place in Pakistan on September 10, 2002," Pet'r's Reply at 2. Had Petitioner pursued his request as originally framed, the Court would have found that the request is not narrowly tailored, does not specify with sufficient particularity the discovery sought, or explain why the requested information would enable Petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the Government.

7

SECRET // NOFORN

request satisfies the requirements of Section I.E.2 of the CMO. Accordingly, it shall be

GRANTED.

In sum, Petitioner's first request, as narrowed by Petitioner, shall be GRANTED in its

entirety. By no later than May 1, 2012, the Government shall produce (1) the single photograph

shown to Hicks and identified as Petitioner during an interrogation ██████████ (2)

copies of any photographs of Zubair that were taken following the raids that took place in

Karachi, Pakistan in September 2002, and (3) the two photographs alleged to be of Petitioner that

were shown to Al Gharise during an interrogation ██████████

> B.   *Petitioner's Request for Information from the Detainee Log and the INTREP Activity Log (Request No. 2)*

Petitioner's second request is for "all log entries from the 'Detainee Log' and the

'INTREP Activity' log which relate to [him] for the period between May 2002 and December

2003."[3] Pet'r's Mem. at 2. Petitioner concedes that the Government has already disclosed

entries from both of these logs, and he contends that those entries demonstrate his "mental

deterioration during this time period." *Id.* at 9. Nonetheless, Petitioner claims that unidentified

former-detainees informed his counsel that Petitioner's aberrant behavior "lasted much longer

---

[3] Originally, Petitioner's second request also encompassed "reports or documents within the government's possession which indicate that Petitioner was subjected to frequent cell movements, ██████████ while detained at Guantanamo Bay." Pet'r's Mem. at 2. Petitioner has since withdrawn that aspect of his request based on the assumption that a review of certain records conducted by the Government's declarant ██████████ Pet'r's Reply at 8. Accordingly, there appears to be no need for the Court to resolve the request. However, if Petitioner's assumption about the scope of the declarant's review is incorrect, the Government must promptly notify Petitioner's counsel and bring the matter to the Court's attention.

8

SECRET // NOFORN

than the limited entries disclosed by the government indicate." *Id.* at 10. On this basis alone,

Petitioner argues that he is now entitled to all log entries relating to him during this time period,

without further limitation. *Id.* Framed in such broad terms, Petitioner's request is not narrowly

tailored and does not explain why the request is likely to produce evidence that Petitioner's

detention is unlawful. Accordingly, Petitioner's second request for discovery shall be DENIED.

Nonetheless, the Court pauses to observe that the Government represents that the entries

that it has produced to Petitioner to date include "all potentially exculpatory entries" from both

logs. Gov't's Opp'n at 17. The term "exculpatory evidence" includes "any evidence or

information that undercuts the reliability and/or credibility of the Government's evidence." Apr.

6, 2009 Order at 2. From the Government's [262] Witness and Exhibit Lists, it is clear that the

Government intends to rely on numerous statements that Petitioner made to interrogators during

the time period covered by Petitioner's second request, including statements made on ███████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ Given the Government's reliance on statements spread

throughout this period, any entries contained in the Detainee Log and the INTREP Activity log

pertaining to Petitioner's mental deterioration during this time period would fall within the ambit

of the exculpatory evidence that must be disclosed under Section I.D.1 of the CMO because they

would tend to undercut the reliability and/or credibility of Petitioner's statements. Similarly, the

Government must produce "information about the circumstances in which such statements of

9

SECRET // NOFORN

[Petitioner] were made or adopted" under Section I.E.1 of the CMO. Because this encompasses information about "all surrounding circumstances," Apr. 6, 2009 Order at 3, any entries in the Detainee Log and the INTREP Activity log pertaining to Petitioner's mental condition or deterioration due to the conditions of his detention would fall within the ambit of the Government's disclosure obligations under Section I.E.1 of the CMO. Based on the Government's representation that the entries that it has produced to date include "all potentially exculpatory entries" from both logs, Gov't's Opp'n at 17, the Court understands the Government to be representing that it has complied with the foregoing requirements. However, to dispel any doubt, by no later than May 1, 2012, the Government shall (a) certify to the Court that it has produced all entries from the Detainee Log and the INTREP Activity log (or portions thereof) that pertain to Petitioner's mental condition or deterioration in the period extending from May 2002 through December 2003, (b) produce such entries, or (c) justify its failure to produce such entries.

    *C.*    *Petitioner's Request for Access to His Original Medical Records (Request No. 3)*

Petitioner's third request is for access to his "original" medical records. Pet'r's Mem. at 3. Because Petitioner has since withdrawn this request, *see* Pet'r's Reply at 8, it need not be resolved by the Court and it shall be DENIED WITHOUT PREJUDICE.

    *D.*    *Petitioner's Request* ▮▮▮▮▮▮▮ *His Forcible Removal from His Cell at Guantanamo Bay (Request No. 4)*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10

UNCLASSIFIED// FOR PUBLIC RELEASE

SECRET // NOFORN

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████ Pet'r's

Reply at 9. Petitioner also relies upon an entry from the INTREP Activity log produced by the

Government that reflects that, on at least one occasion (specifically, on December 2, 2002),

Petitioner ███████████████████████████████ Pet'r's Mem., Attach. G at 2.

The Government's response is two-fold. First, the Government claims that Petitioner has

failed to explain why the request is likely to produce evidence that demonstrates that his

detention is unlawful. Specifically, the Government argues that Petitioner has not articulated

███████████████████████████████████████████████
███████████████████████████████████████████████

███████████ Gov't's Opp'n at 20. The Court disagrees. To the extent there are

███████████ Petitioner was "forcibly removed" from his cell and suffered

"psychological distress" relatively close in time to making inculpatory statements to

interrogators, then they might be probative of Petitioner's mental condition at the time he made

such statements or otherwise reflect on the "surrounding circumstances" in which those

inculpatory statements were made. Second, the Government claims that Petitioner's request is

not narrowly tailored and does not specify with sufficient particularity the discovery sought. *See*

*id.* On this score, the Court agrees in part. As presently framed, Petitioner fourth request seeks

███████████████████████████████████████████████
███████████████████████████████████████████████

██████████████████████ will evidence the "psychological distress" he

11

SECRET // NOFORN

allegedly suffered. However, when Petitioner has sought other evidence potentially bearing on

his mental condition, he has confined his requests to the time period extending from May 2002

through December 2003. In connection with this request, Petitioner has not attempted to explain

why the time period should extend further back in time to cover January 2002 through April

2002. In that respect, the Court finds that Petitioner's fourth request is not narrowly tailored and

that Petitioner has failed to explain why the request is likely to produce evidence that

demonstrates that his detention is unlawful. Nonetheless, as previously noted, the Government

intends to rely upon numerous statements made by Petitioner from May 2002 through December

2003. Given the Government's reliance on statements spread throughout this period, Petitioner's

request ▇▇▇▇▇▇▇▇▇▇ showing his forcible removal from his cell in this specific time

period satisfies the requirements of Section I.E.2 of the CMO.

     Accordingly, Petitioner's fourth request for discovery shall be GRANTED IN PART and

DENIED WITHOUT PREJUDICE IN PART. Specifically, the request shall be GRANTED

insofar as Petitioner seeks ▇▇▇▇▇▇▇ reflecting his forcible removal from his cell by

Guantanamo Bay personnel in the time period extending from May 2002 through December

2003; and the request shall be DENIED WITHOUT PREJUDICE insofar as Petitioner seeks

▇▇▇▇▇▇▇ reflecting his forcible removal from his cell by Guantanamo Bay personnel in

the time period extending from January 2002 through April 2002.

    *E.   Petitioner's Request for Evidence of Noncombatants in Tora Bora (Request No. 5)*

    Petitioner's fifth request was originally brought under Section I.E.2 of the CMO and

sought "all documentary evidence that is within the government's possession which tends to

12

SECRET // NOFORN

show that noncombatants were present at Tora Bora during the time period the government maintains Petitioner was at Tora Bora, including any documents that tend to show that some noncombatants were detained and subsequently released." Pet'r's Mem. at 3. In his Reply, Petitioner narrows the scope of the request, indicating that he now "asks only that the Court specifically require the Government" to "disclose such evidence pursuant to Section I.D.1 of the CMO which requires the government to disclose 'all reasonably available evidence in its possession that tends to materially undermine the information presented to support the government's justification for detaining the petitioner.'"[4] Pet'r's Reply at 10 (quoting CMO § I.D.1). So framed, Petitioner's request is substantially narrowed, reaching only "reasonably available evidence"—that is, "evidence contained in any information reviewed by attorneys preparing factual returns for all detainees" and "any other evidence the government discovers while litigating habeas corpus petitions filed by detainees at Guantanamo Bay." CMO § I.D.1.

The Government claims that "any evidence regarding the presence of noncombatants in Tora Bora would in no way undermine the Government's rationale for detaining Petitioner,"

---

[4] Had Petitioner pursued his request as originally framed under Section I.E.2, the Court would have found that the request is not narrowly tailored, does not specify with sufficient particularity the discovery sought, or explain why the requested information would enable Petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the Government. In particular, the Court credits the Government's representation that "[d]uring the relevant time period, there were numerous military units operating in the Tora Bora region" and "any one of those units may have been involved" in detaining noncombatants. Gov't's Opp'n at 23. A search for records responsive to Petitioner's expansive original request would unfairly disrupt and unduly burden the Government because "there is no centralized system of records" and the Government would have to contact "each of those military units and ask them to search for records which might or might not exist, and which were created over nine years ago." Id.

13

SECRET // NOFORN

emphasizing that it relies not only on Petitioner's mere presence in Tora Bora in the relevant time period, but also evidence that "petitioner stayed in al-Qaida guesthouses, attended terrorist training camps, worked for al-Qaida as an explosives instructor, and fought on the front lines on behalf of al-Qaida and the Taliban before retreating to Tora Bora." Gov't's Opp'n at 22. While the Court agrees with the Government that at the merits stage it must consider the evidence "in its entirety in determining whether the government has satisfied its burden of proof," *Salahi v. Obama*, 625 F.3d 745, 753 (D.C. Cir. 2010), it also recognizes that the Court of Appeals has suggested that the ratio of "combatants" to "noncombatants" in Tora Bora might be one relevant consideration among many when determining the lawfulness of a petitioner's detention. *See Uthman v. Obama*, 637 F.3d 400, 404 (D.C. Cir. 2011) ("Because few, if any, non-combatants were near Tora Bora, it follows that most, if not all, of those in the vicinity of Tora Bora . . . were combatants."). As a result, it is at least conceivable that there is a universe of reasonably available evidence relating to this subject that might "tend[] materially to undermine the information presented to support the government's justification for detaining the petitioner" and thus be discoverable under Section I.D.1 of the CMO. For example, that universe might include evidence suggesting that certain Uighurs were apprehended in Tora Bora but were subsequently found by the Department of Defense to no longer be enemy combatants, as such evidence was apparently gathered and produced by the Government in a Guantanamo Bay habeas case before Judge Emmet G. Sullivan. *See* Order, *Batarfi v. Gates*, Civil Action No. 05-00409 (EGS) (D.D.C. Feb. 10, 2009), ECF No. [162], at 2. Ultimately, however, Petitioner has framed his request in such vague and unilluminating terms that the Court is left to guess as to what kind of

14

SECRET // NOFORN

information he has in mind, let alone whether such information would fall within the scope of the

Government's disclosure obligations under Section I.D.1. Nor is the Court convinced that the

Government would be able to fare any better. Most notably, Petitioner makes no attempt to

articulate how he would define "combatant" and "noncombatant" in the context of this request or

at what point in time the determination of whether an individual was a "combatant" or

"noncombatant" would govern (at detention, through a subsequent determination by the

Government, through a favorable court ruling, etc.). Accordingly, at this time, the Court declines

Petitioner's invitation to "specifically require" the Government to produce reasonably available

evidence tending to show that noncombatants were present at Tora Bora during the time period

the Government maintains Petitioner was in the area under Section I.D.1 of the CMO. Instead,

the Court shall require the parties to promptly meet and confer in an attempt to refine and narrow

the scope of Petitioner's request under Section I.D.1 of the CMO. By no later than May 1, 2012,

the parties shall file a Joint Status Report indicating the fruits of their efforts. In the meantime,

Petitioner's fifth request is DENIED WITHOUT PREJUDICE.

> F.    *Petitioner's Request for Unredacted Copies of Petitioner's Exhibits* ▮▮▮▮
> *(Request No. 6)*

Petitioner's sixth request seeks "[u]nredacted copies of Petitioner's Exhibits ▮▮▮▮

▮▮▮▮▮▮▮" Pet'r's Suppl. Mem. at 2. Petitioner's sole argument in support of

disclosure is that the production of unredacted copies of these exhibits is required by the terms of

this Court's April 6, 2009 Order. *See id.* at 2-3. But Petitioner's understanding of the scope of

this Court's April 6, 2009 Order is mistaken. Pursuant to the Court's Order, the Government was

required to disclose reports of interrogations of Petitioner from November 2001 through May

15

SECRET // NOFORN

2002 insofar as those reports included ███████████████████

███████████████████████████████████

███████ Apr. 6, 2009 Order at 13. The Court neither contemplated nor

anticipated that the Government would produce unredacted copies of such interrogation reports

to the extent they include other information. Accordingly, Petitioner's sixth request is DENIED.

However, by no later than May 1, 2012, the Government shall (a) certify to the Court that it has

not redacted information about ████████████████████████

████████ from Petitioner's Exhibits ███████████████ (b) produce such

information, or (c) justify its failure to produce such information.

    G.    *Petitioner's Request for an Unredacted Copy of Petitioner's* ██████ *(Request No. 7).*

    Petitioner's seventh request seeks "[a]n unredacted copy of Petitioner's Exhibit ████

██████████████████████████████████████████

████████████████████████████████ In

response, the Government represents that it is "mak[ing] appropriate inquiries as to whether it

would be feasible to disclose a less redacted version of the report." Gov't's Suppl. Opp'n at 4.

Accordingly, there does not appear to be a need for the Court to resolve Petitioner's request at

this time. The parties shall promptly meet and confer and, by no later than May 1, 2012, file a

Joint Status Report indicating whether they have resolved Petitioner's concerns. At this time,

Petitioner's seventh request is DENIED WITHOUT PREJUDICE.

16

SECRET // NOFORN

H.     *Petitioner's Request for Reports of Interrogations Between June 2002 and October 2002 (Request No. 8)*

Petitioner's eighth request is for "[a]ll reports of interrogations of Petitioner between June and October 2002." Pet'r's Suppl. Mem. at 2. In support, Petitioner claims that "coercive tactics" may have been used in connection with interrogations during this time period and alleges that his "mental condition deteriorated as the interrogation process intensified." *Id.* at 4. Earlier in this action, the Court required the Government to disclose to Petitioner those portions of reports of interrogations from November 2001 through May 2002 that included "descriptions of the surrounding circumstances of Petitioner's interrogations" and "information concerning the use of coercive tactics, if any were employed." Apr. 6, 2009 Order at 13. Having already permitted the production of such records for an earlier time period, the Court sees no good reason to depart from this logic now. Petitioner's eighth request shall be GRANTED IN PART and DENIED IN PART. Specifically, the request shall be GRANTED insofar as Petitioner seeks those portions of reports of interrogations of him between June 2002 and October 2002 that relate to the "surrounding circumstances" of the interrogations, including the use of coercive tactics, or that reflect upon Petitioner's mental condition or deterioration; the request shall otherwise be DENIED because Petitioner's request for all reports of interrogations in this time period, without further limitation, is not narrowly tailored and does not explain why it is likely to produce evidence that demonstrates that his detention is unlawful.

I.     *Petitioner's Request for AFGP 2002-800628 (Request No. 9)*

Petitioner's ninth request is for "[a] list of all materials seized on December 15, 2001 and identified as AFGP #2002-800628." Pet'r's Suppl. Mem. at 2. Petitioner's request is predicated

17

SECRET // NOFORN

on his assumption that AFGP 2002-800628 "refers to materials seized at the time of Petitioner's

arrest." *Id.* at 5. The Government responds that Petitioner's "assumption is incorrect," Gov't's

Suppl. Opp'n at 5, and introduces documentation evidencing that AFGP 2002-800628 consists

not of materials that were seized at the time of Petitioner's arrest, but rather military training

camp applications that were recovered during a raid of an office in Kandahar, Afghanistan that

have no relevance to the lawfulness of Petitioner's detention. Indeed, the Government represents

that the underlying report that references AFGP 2002-800628 "was disclosed to Petitioner's

counsel in error." *Id.* at 6 n.4. These representations satisfy the Court that Petitioner's request is

not likely to produce evidence that demonstrates that Petitioner's detention is unlawful. Because

Petitioner has failed to offer any argument in rebuttal, his ninth request for discovery is DENIED.

### III. CONCLUSION AND ORDER

For the reasons set forth above, it is, this 10th day of April, 2012, hereby

**ORDERED** that Petitioner's [250/255] Motion to Compel is GRANTED IN PART and

DENIED IN PART, as follows:

(a)     Petitioner's first request is GRANTED. By no later than May 1, 2012, the

Government shall produce to Petitioner (i) the single photograph shown to Hicks and identified

as Petitioner during an interrogation on December 1, 2002, (ii) copies of any photographs of

Zubair that were taken following the raids that took place in Karachi, Pakistan in September

2002, and (iii) the two photographs alleged to be of Petitioner that were shown to Al Gharise

during an interrogation

(b)     Petitioner's second request for all log entries from the Detainee Log and

18

UNCLASSIFIED// FOR PUBLIC RELEASE

SECRET // NOFORN

the INTREP Activity log which relate to him for the period between May 2002 and December

2003 is DENIED. However, by no later than May 1, 2012, the Government shall (i) certify to the

Court that it has produced all entries from the Detainee Log and the INTREP Activity log (or

portions thereof) that pertain to Petitioner's mental condition or deterioration in the period

extending from May 2002 through December 2003, (ii) produce such entries, or (iii) justify its

failure to produce such entries.

(c)     Petitioner's third request for access to his original medical records is

DENIED WITHOUT PREJUDICE.

(d)     Petitioner's fourth request is GRANTED insofar as Petitioner seeks ▮▮▮

▮▮▮▮▮ reflecting his forcible removal from his cell by Guantanamo Bay personnel in the time

period extending from May 2002 through December 2003 and is DENIED WITHOUT

PREJUDICE insofar as Petitioner seeks ▮▮▮▮▮▮ reflecting his forcible removal from his

cell by Guantanamo Bay personnel in the time period extending from January 2002 through April

2002.

(e)     Petitioner's fifth request for an Order specifically requiring the

Government to produce reasonably available evidence tending to show that noncombatants were

present at Tora Bora during the time period the Government maintains Petitioner was in the area

under Section I.D.1 of the CMO is DENIED WITHOUT PREJUDICE. The parties shall

promptly meet and confer in an attempt to refine and narrow the scope of Petitioner's request

under Section I.D.1 of the CMO and, by no later than May 1, 2012, file a Joint Status Report

indicating the fruits of their efforts.

19

SECRET // NOFORN

(f)      Petitioner's sixth request for unredacted copies of Petitioner's Exhibits 1, 2, 4 through 8, 162, and 163 is DENIED.  However, by no later than May 1, 2012, the Government shall (i) certify to the Court that it has not redacted information about "all surrounding circumstances" in which the statements of Petitioner were made from Petitioner's Exhibits 1, 2, 4 through 8, 162, and 163, (ii) produce such information, or (iii) justify its failure to produce such information.

(g)      Petitioner's seventh request for an unredacted copy of Petitioner's Exhibit 9 is DENIED WITHOUT PREJUDICE.  The parties shall promptly meet and confer and, by no later than May 1, 2012, file a Joint Status Report indicating whether they have resolved Petitioner's concerns.

(h)      Petitioner's eighth request is GRANTED insofar as Petitioner seeks those portions of reports of interrogations of him between June 2002 and October 2002 that relate to the "surrounding circumstances" of the interrogations, including the use of coercive tactics, or that reflect upon Petitioner's mental condition or deterioration, and is otherwise DENIED.

(i)      Petitioner's ninth request for a list of all materials identified as AFGP 2002-800628 is DENIED.

**SO ORDERED.**

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

20