UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TARIQ MAHMOUD ALSAWAM,  :

          Petitioner,  :

    v.  :  05-cv-1244 (CKK)

BARACK OBAMA, et al.,  :

          Respondents.  :

## EMERGENCY MOTION FOR MEDICAL CARE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Petitioner Tarek Mahmoud El Sawah[1] respectfully moves this Honorable Court to issue the attached proposed order directing the government to immediately provide adequate medical care to Petitioner in order to ensure adequate access to counsel. As required by Local Civil Rule 7(m), undersigned counsel contacted counsel for the Respondents before filing this motion. Counsel requested that Petitioner receive immediate medical treatment.[2] On August 20, 2013, government counsel responded that the request for medical care had been forwarded to appropriate Guantanamo personnel and that "decisions regarding Mr. El Sawah's medical care are made by the health professionals at the Joint Medical Group, Guantanamo Bay, consistent with the policy of the Department of Defense to support the preservation of life by appropriate clinical means, in a humane manner, and in accordance with all applicable standards."

---

[1] This matter is captioned "Tariq Mahmoud Alsawam" due to a clerical error that occurred when Mr. El Sawah's *pro se* habeas petition was docketed.

[2] On July 23, 2013, counsel also requested updated copies of Mr. El Sawah's medical records (that is the records from July 26, 2013 to date). Government counsel indicated that the medical records will be provided "within the next week or two."

Government counsel provided no additional information regarding the status of Mr. El Sawah's health care or treatment plan. Counsel's understanding is that no medical treatment has been provided since government counsel and the authorities at Guantanamo Bay were made aware of Mr. El Sawah's condition on August 15, 2013. *See* Attachment 4.

## Background

In late 2001, members of the Northern Alliance in Afghanistan arrested Mr. El Sawah and turned him over to the custody of the United States. The U.S. military held him for a period of time in Afghanistan and then transferred him to the U.S. Naval Station in Guantanamo Bay, Cuba, where he has been imprisoned since 2002. His petition for writ of habeas corpus has been pending since June 22, 2005. Proceedings in this matter were delayed on several occasions due to the litigation of legal issues in related matters, the government's decision to prefer military commission charges (charges that subsequently were dismissed), discussions regarding the possible resolution of this matter, and the litigation of discovery issues. Discovery in this matter is now substantially completed. Petitioner is awaiting information from the government regarding the remaining materials to be disclosed, and on Friday, August 23, 2013, a status report is due to the Court with a proposed schedule for further proceedings. Undersigned counsel's ability to represent Petitioner in these proceedings is now in danger due to Petitioner's physical condition. If Mr. El Sawah does not receive immediate medical care, counsel will be unable to communicate with him in order to prepare and proceed in this matter.

On July 18, 2013, Dr. Sondra Crosby visited with Mr. El Sawah. Dr. Crosby was retained as a defense expert, met with Mr. El Sawah on several previous occasions, has reviewed the medical records previously provided by the government which are dated through July 26, 2012,

and is familiar with Mr. El Sawah's medical condition. During her visit on July 18, 2013, Dr. Crosby noted an alarming decline in Mr. El Sawah's health and that Mr. El Sawah is not receiving necessary medical care. Mr. El Sawah weighs over 400 pounds and suffers from morbid obesity, high-risk coronary artery disease, congestive heart disease, obstructive sleep apnea, pulmonary impairment, diabetes, and chronic arteriovascular disease.

After consulting with Dr. Crosby, on August 13, 2013, Brigadier General (Retired) Stephen N. Xenakis, M.D. met with Mr. El Sawah. Dr. Xenakis previously met with Mr. El Sawah in 2012 and was familiar with his medical condition. He too observed that Mr. El Sawah's health has significantly deteriorated. *See* Attachment 1. Dr. Xenakis noted:

> [Mr. El Sawah's] functioning has visibly deteriorated and he manifests signs and symptoms that put him at risk for an imminent demise. He is visibly short of breath with ambulation of no more than 10 feet and regularly falls asleep during conversation. These are typical signs of serious cardiopulmonary disease associated with moderate obesity and obstructive sleep apnea. His functional status is extremely limited. His mental state has worsened, and he appears apathetic with diminished will to live.

*Id.* at ¶ 5.

The physicians at Guantanamo have ordered further tests and evaluations for Mr. El Sawah's multiple medical conditions, including a cardiac stress test, sleep studies, and radiological tests of cardiac and pulmonary functioning. However, these tests have not been performed because the officials in Guantanamo have recently instituted a policy requiring Mr. El Sawah's arms and legs to be shackled in order for him to move from his confinement area to the medical clinic. *See* Attachment 1 at ¶ 6; Attachment 2 at ¶ 3; Attachment 3 at ¶ 4. As Dr. Xenakis confirms, Mr. El Sawah's "medical conditions and daily functioning prohibit him

from ambulating and conforming to the requirement of shackling for transportation." Attachment 1 at ¶ 6. He simply cannot move the required distance while shackled. Although Mr. El Sawah has not been shackled at Guantanamo since 2004, and has attended numerous previous medical appointments without shackles, the officials in Guantanamo have refused Mr. El Sawah's written request to waive this requirement and have not offered any alternative means of transportation, such as a wheelchair. *See* Attachments 2 at ¶ 3; Attachment 3 at ¶ 4. Instead, they have treated Mr. El Sawah's inability to move while shackled as a refusal to be shackled and as a refusal to receive medical treatment. *Id.* As Dr. Xenakis reports, these "policies and practices violate the accepted procedures of medical care in a military setting." Attachment 1 at ¶ 9. Because he cannot move to the medical clinic shackled, Mr. El Sawah has essentially been left to die in his area of confinement, and as Dr. Xenakis and Dr. Crosby report, without adequate medical treatment, his death is imminent.

Moreover, as Dr. Xenakis and Dr. Crosby report, Mr. El Sawah is unlikely to be able to complete routine cardiac testing, such as a stress test. "He requires more sophisticated evaluations including nuclear scanning," and because "such radiologic tests are not available at the Guantanamo Bay Hospital, Mr. El Sawah requires "evacuation to a medical center for appropriate assessment and treatment." Attachment 1 at 8. Dr. Crosby reports that, at a minimum, positron emission tomography (PET) myocardial perfusion imaging (MPI) is necessary to evaluate Mr. El Sawah's cardiac condition. *See* Attachment 4 at ¶ 2.

On August 13, 14, 15, and 16, Mr. El Sawah's military defense counsel met with Mr. El Sawah. *See* Attachments 2 and 3. During these meetings, military defense counsel observed the same conditions observed by Dr. Crosby and Dr. Xenakis. *Id.* Mr. El Sawah had

4

trouble concentrating and speaking, was dizzy when he stood up and tried to walk, described experiencing periodic electric-shock like pulses in his brain (or stroke-like episodes) and pains in his chest, and had a persistent cough. *Id.* During military defense counsel's visit on August 16, Mr. El Sawah was unable to walk any distance. *See* Attachment 2 at ¶ 2. During the legal visits, Mr. El Sawah was unable to remain awake and unable to focus on or understand the issues raised by counsel. *See* Attachment 3 at ¶2. Military defense counsel noted that Mr. El Sawah's medical condition affected their ability to represent him. *See id.* at ¶ 6. After observing Mr. El Sawah's condition, on August 15, 2013, military defense counsel submitted a letter to Rear Admiral Richard W. Butler, Commander, Joint Task Force -- Guantanamo on August 15, 2012, asking that Mr. El Sawah be transferred to a facility where he can receive the treatment he needs and asking for special accommodations for his disabilities, including the waiver of the shackling requirement when he attends medical appointments.[3] *See* Attachment 4 at ¶ 6. Military defense counsel have received no response to their letter or these requests. *See* Attachment 2 at ¶ 2; Attachment 3 at ¶ 5.

Undersigned counsel acknowledges that habeas counsel have not visited Mr. El Sawah recently. This is due to the extreme budgetary constraints that the Federal Public Defender's Office ("FPD") has experienced this year.[4] Although counsel has not personally visited with Mr.

---

[3] As military defense counsel noted in the letter, Article 30 of the Geneva Convention Relative to the Treatment of Prisoners of War (Geneva Convention III) requires that "[p]risoners of war suffering from serious disease, or whose condition necessitates special treatment, a surgical operation or hospital care, must be admitted to any military or civilian medical unit where such treatment can be given . . ."

[4] Every employee in the Federal Public Defender's Office was required to take 10 furlough days between March and July of 2013, and the office's travel budget is extremely limited. Furloughs and limited travel budget are expected again in fiscal year 2014.

5

El Sawah, counsel will need to do so as this case moves forward in the next few months and counsel will need Mr. El Sawah's assistance in preparing for motions and the merits hearing in this matter. The reports of military defense counsel, Dr. Crosby and Dr. Xenakis, demonstrate that counsel's ability to communicate with Mr. El Sawah is at risk. For the reasons military defense counsel's ability to communicate with Mr. El Sawah has been impaired, habeas counsel's ability to communicate with Mr. El Sawah will be impaired. Particularly in light of the FPD's budgetary constraints, as this case moves forward in the next few months, counsel will need to make efficient use of legal visits with Mr. El Sawah. Counsel will not be able to do so if Mr. El Sawah does not receive treatment and his health continues to deteriorate.

## Argument

Mr. El Sawah has a right to seek a writ of habeas corpus and a right to be represented by counsel in these proceedings. *Boumediene v. Bush*, 553 U.S. 723, 128 S.Ct. 2229, 2240 (2008); *Hamdi v. Rumsfeld*, 542 U.S. 506, 539 (2004). Here, the government's failure to provide adequate medical care interferes with Petitioner's access to counsel and will prevent him from pursuing his habeas case before this Court. *See In re Guantanamo Bay Detainee Litigation*, 2013 WL 3467134, *8 (D.D.C. 2013). For these reasons, the Court is authorized to issue an order that will require the government to provide adequate medical care and to cease with what is functionally an interference with Mr. El Sawah's right to proceed in this matter and his right to consult with counsel. *Id.* (district court has jurisdiction to consider counsel access issues).

Counsel cannot properly represent Petitioner unless counsel has access to him and is able to communicate with him. *See Al-Joudi v. Bush*, 406 F.Supp.2d 13, 21-22 (D.D.C. 2005). (counsel "must be made aware if [Petitioner is] in such fragile physical condition that [his] future

ability to communicate is in imminent danger"). Counsel cannot communicate with Mr. El Sawah if he is so sick that he cannot stay conscious to discuss issues and his cognitive ability to understand legal issues is impaired. *See Al-Oshan v. Obama*, 753 F.Supp.2d 1, 6 (D.D.C. 2010) (petitioner's health is prerequisite condition to ability to consult with counsel and participate in proceedings). Without adequate medical care, Mr. El Sawah's right to petition for a writ of habeas corpus will be meaningless because he will not be able to communicate with counsel in order to adequately prepare for and participate in the proceedings, and he will likely not survive long enough to obtain relief.

## Conclusion

For the foregoing reasons, Mr. El Sawah respectfully requests that the Court issue an order directing the government to provide Mr. El Sawah with immediate medical attention. This order is necessary for the Court to ensure access to counsel and careful processing and adjudication of Petitioner's petition for writ of habeas corpus.

    Respectfully submitted,

    A. J. KRAMER
    FEDERAL PUBLIC DEFENDER

    /s/
    _____

    MARY MANNING PETRAS
    Assistant Federal Public Defender
    625 Indiana Avenue, N.W.
    Suite 550
    Washington, D.C. 20004
    (202) 208-7500